[No. 34333.   Department Two.   February 13, 1958.]

MASON J. MYERS *et al.*, *Respondents*, v. LEROY SMITH, *Appellant*.[1]

[1]Reported in 321 P. (2d) 551.

*Gavin, Robinson & Kendrick, Pomeroy & Ross,* and *Robert R. Redman,* for appellant.

*Olson, Palmer & McArdle,* for respondents.

FOSTER, J.—In this automobile accident case, an order granting a new trial, limited to the issue of damage alone, is here for review. Appellant, defendant below, contends that judgment should be entered on the $4,100 verdict, which is undivided between general and special damage, or, in the alternative, that the new trial should be upon all issues. Respondents, husband and wife, plaintiffs below, contend that the verdict is conclusive on the issue of liability, but that the smallness of the verdict, $4,100, indicates the jury was motivated by passion and prejudice, and that the trial court correctly limited the new trial to the amount of respondents' damages.

The trial court found that passion and prejudice inhered in the verdict. We are at a loss, however, to discern any device by which it may be determined that passion and prejudice, if any, extended only to the damage issue and did not taint the finding of liability.[2] The circumstances presently noticed, however, are more indicative, or at least

---

[2] "Having more particularly re-examined the question, however, we now are of the opinion that where passion or prejudice or misconduct actuates the jury in determining an issue, the verdict should be held invalid in its entirety. . . .

"Since the jury was actuated by passion and prejudice in assessing the amount of the award, can it be surely said the jury was not actuated by some misconduct or irresponsibility in determining the issue of liability? For example, if the award was so disproportionately small as to demonstrate passion and prejudice or misconduct on the part of the jury, we believe it could not be surely said the jury did not actually make the partially compensating award because the jury in fact doubted defendant's liability. We have the view, therefore, that it may not be soundly argued that inasmuch as the jury found defendant liable for plaintiff's injury there was no passion, prejudice or misconduct involved in arriving at the 'liability portion' of the verdict. The fallacy in such an argument is that merely because plaintiff was not prejudiced by the liability portion of the verdict does not mean that it was not pervaded by the same misconduct and actuated by the same passion and prejudice as was the 'damages portion' of the verdict." *Taylor v. St. Louis Public Service Co.,* (Mo.) 303 S.W. (2d) 608, 612.

suggestive, of compromise, and, therefore, the new trial should include all issues.

Respondents, husband and wife, sued for car damage and personal injuries sustained by Mrs. Myers. On the occasion in question, appellant intended to turn left into his private driveway in face of respondents' car approaching in the opposite direction. The evidence as to the subsequent events is in sharp conflict, except that all agree there was no collision between the two vehicles.

Appellant's version, in which he is supported by several disinterested witnesses, is that his directional signal device signaled a left turn for a considerable distance before reaching a point on the highway opposite his private driveway, where, without crossing the center highway line, he stopped to permit respondents' car to pass, and that respondents' car, at an excessive speed, drove onto the unpaved shoulder of the road, went out of control into the ditch and stopped by colliding with a pole.

Respondents' version, in which they are corroborated by several disinterested witnesses, is that the appellant drove over the center line, forcing them to take to the unpaved shoulder, and that this was the cause of their car going into the ditch and consequent collision with the pole, causing their car to overturn, inflicting the personal injuries on the respondent wife. Respondents' evidence negatives excessive speed.

All agree, however, that the cars never touched.

Nineteen years previous to this accident when respondent wife was a high school student, she fractured her left femur, in consequence of which a bone infection called "osteomyelitis" and a wasting arthritis developed. The left leg was shortened as a result, but, by the time of the accident, the osteomyelitis had subsided and was not then active, although she continued to have difficulty with the arthritis and had consulted a physician with reference to it in March preceding the accident in May, 1956.

Both the osteomyelitis and the arthritis were activated by the accident. Her condition is extremely serious, and

the physician witnesses all testified that amputation of the left femur near the hip was now advisable.

The evidence of the extent of the disability in the left femur prior to the accident is not crystal clear. The court instructed the jury that respondents were entitled to recover for any lighting up or activating of any pre-existing dormant arthritis or osteomyelitis, but were not entitled to recover for any disability or physical ailment existing prior to the accident.

Neither party complains of the instructions, so they are the law of this case.

The modern device of limiting a new trial to one or more issues, while sustaining the verdict as to the remainder, was unknown to the common law, which required a new trial of all issues or none.[3]

By statutes in some states,[4] by court rule in others,[5] and by decisional law elsewhere, a limited new trial is now, however, widely sanctioned. Although Federal Rule of Civil Procedure 59, 28 U.S.C.A. 269, authorizes a partial new trial, the device was sustained by the United States supreme court prior to the adoption of the new rules in *Gasoline Products Co. v. Champlin Refining Co.*, 283 U. S. 494, 75 L. Ed. 1188, 51 S. Ct. 513. Without sanction by either rule or statute, it has long been accepted practice here.[6]

---

[3]*Gasoline Products Co. v. Champlin Refining Co.*, 283 U. S. 494, 75 L. Ed. 1188, 51 S. Ct. 513; 6 Moore's Federal Practice (2d ed.) 3729, § 59.05 (1).

[4]16 West's California Civil Procedure 623, § 657; 32 Vernon's Annotated Missouri Statutes 3, § 510.330.

[5]Arizona Rule of Civil Procedure 59 (b), 16 Ariz. Rev. Stat. 605; Colorado Rule of Civil Procedure 59 (a), 1 Colo. Rev. Stat. 60; Florida Rule of Civil Procedure 2.8 (a), 31 Fla. Stat. Annotated 68; Kentucky Civil Rule 59.01, Ky. Civil Rules 518; Minnesota Civil Rule 59.01, 3 Minn. Rules Practice 184; New Jersey Superior Court Civil Practice Rule 4:61, 2A N. J. Practice 92.

[6]*Greenwood v. Olympic, Inc.*, ante p. 18, 315 P. (2d) 295; *Lanegan v. Crauford*, 49 Wn. (2d) 562, 304 P. (2d) 953; *Owens v. Scott Publishing Co.*, 46 Wn. (2d) 666, 284 P. (2d) 296; *McUne v. Fuqua*, 45 Wn. (2d) 650, 277 P. (2d) 324; *Nelson v. Fairfield*, 40 Wn. (2d) 496, 244 P. (2d) 244; *Cramer v. Bock*, 21 Wn. (2d) 13, 149 P. (2d) 525; *Auwarter v. Kroll*, 79 Wash. 179, 140 Pac. 326.

A limited new trial is extremely beneficial to the advancement of the administration of justice, but it is not a rule of universal application and should not be jeopardized by wholesale misapplication. The late Chief Justice Arthur T. Vanderbilt, one of the leading exponents of the new device,[7] speaking for the unanimous supreme court of New Jersey, in *Hendrikson v. Koppers Co.*, 11 N. J. 600, 609, 95 A. (2d) 710, recently said:

"Only in those cases where the verdict is clearly free from compromise should a new trial be limited to the question of damages only."

Inattention to this viewpoint may be attended with mischievous consequences.

Respondent Dorothy Myers sustained severe injuries. The special damages proved aggregated $1,686.36. The cost of future medical care was placed at a minimum of $1,000, the two items aggregating $2,686.36,[8] which the court said left but $1,413.60 for general damages.

There was evidence that Mrs. Myers' osteomyelitis prior to the accident was not in an acute state, although she was considerably disabled by arthritis. The osteomyelitis has not responded satisfactorily to treatment. She has lost about thirty pounds in weight, and her physicians testified that amputation of the left leg would be necessary.

In both its comprehensive memorandum opinion and in the order, the trial court said that the smallness of the award indicated the jury was motivated by passion and prejudice. Comment was made upon the fact that the jury deliberated five hours, and that they had sufficient opportunity to, and probably did, give "sufficient consideration to both of the questions of liability and damages." The trial court further stated that it was unable to determine there was any compromise in the verdict.

It is, of course, true that no one except jurors know what transpires inside of the jury room, but appellant's liability

---

[7]*Vanderbilt*, Minimum Standards of Judicial Administration 243, 540-41.

[8]Nine hundred dollars property damage was proved.

is not free from doubt as it was in *Lanegan v. Crauford,* 49 Wn. (2d) 562, 304 P. (2d) 953; *Owens v. Scott Publishing Co.,* 46 Wn. (2d) 666, 284 P. (2d) 296; *Nelson v. Fairfield,* 40 Wn. (2d) 496, 244 P. (2d) 244. Here the evidence on both sides of the liability issue is substantial and conflicting in every respect. There is testimony of disinterested witnesses both of appellant's liability and of his freedom from fault. Moreover, because of the prior misfortunes of the respondent wife in the fracture of the left femur many years before and the extent of the residual disability, the effect of the injury upon her present condition was also a complicated question.

Fundamentally, limiting a new trial to the issue of damages rests upon the hypotheses that the issue of liability is separate and distinct from the issue of damage, that there has been a previous fair trial on the issue of liability, and that no prejudice would ensue to the defendant in not retrying that issue also. While we have a high regard for the views of the experienced and capable trial judge, in his conclusion that he was unable to say there was any compromise in the verdict, it is certainly, likewise, true that it is impossible to say there was no compromise in the verdict.

The circumstances tend strongly to support at least the possibility of a compromise. Appellant's liability is not clear but was sharply disputed. Naturally, the pathetic physical condition of the respondent wife would appeal to the sympathy of any juror. The jury's five-hour deliberation may very well have been the result of its inability to agree upon appellant's liability. Had that question been free from doubt, a much larger verdict would have resulted. It is, therefore, not at all improbable that some jurors doubted appellant's liability but surrendered such doubts in favor of a small verdict. The possibility of compromise under such circumstances cannot be dismissed in a cavalier manner. It is a generalization that verdicts are large where the liability is clear and small where the liability is doubtful. Certain it is, however, in any event, that

we cannot say the appellant would not be prejudiced by a retrial limited to the question of damages with his appellant's liability fixed. The two issues here are inseparably connected.

We are impressed with the decision of the supreme court of Minnesota in *Hurr v. Johnston* (Minn.) 65 N. W. (2d) 193, 198, that under such circumstances neither party "had the fair judgment of the jury upon all the issues."[9]

We recently had occasion to consider this precise question in *Greenwood v. The Olympic, Inc., ante* p. 18, 315 P. (2d) 295, and the conclusions then announced control our decision here. We said:

"It is generally held that it is only where liability is clearly shown that the issue of damages alone can be tried out without injustice to either party. *Lundblad v. Erickson* (1930), 180 Minn. 185, 230 N. W. 473.

"Where the inadequacy of damages is coupled with a very close case on the issue of liability, justice, for obvious reasons, requires a new trial upon the entire case. *Simmons v. Fish* (1912), 210 Mass. 563; 97 N. E. 102, Ann. Cas. 1912D, 588.

"Here the trial court concedes that the respondent's case on the theory of negligence is 'tenuous,' and, as we have seen, erroneously submitted the theory of nuisance as a basis for liability. It seems apparent to us that justice requires that, as said in *Jarrett v. High Point Trunk & Bag Co.* (1907), 144 N. C. 299, 302, 56 S. E. 937,

" 'What is a just compensation the plaintiff should receive, if he is entitled to recover at all, can best be determined by trying the whole case before one Judge and one jury instead of "splitting it up" between different Judges and different juries.' (See, also, *Bencich v. Market St. R. Co.* (1937), 20 Cal. App. (2d) 518, 67 P. (2d) 398, 404; *Donnatin v. Union Hardware & Metal Co.* (1918), 38 Cal. App. 8, 11, 175 Pac. 26, 27, 177 Pac. 845; *Norfolk Southern R. Co. v. Ferebee* (1915), 238 U. S. 269, 274, 59 L. Ed. 1303, 35 S. Ct. 781, where the same quotation appears.)"

---

[9]Procedure—Partial New Trial—Compromise Verdict, 28 N.Y.U. L. Rev. 905; New Trial—Limited to Issue of Damages When Liability Questionable, 26 So. Cal. L. Rev. 463; New Trial on the Issue of Damages in Virginia, 41 Va. L. Rev. 269.

The order granting the new trial upon the question of damages only is modified and the cause remanded with instructions to grant a new trial upon all issues. Costs will abide the event.

HILL, C. J., DONWORTH, ROSELLINI, and OTT, JJ., concur.

*John W. Brisky*, for respondents.

[1]Reported in 321 P. (2d) 555.